Filed 5/2/25  P. v. Guerrero CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B336693 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA332015) |
| v. | |
| GABRIEL GUERRERO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jared D. Moses, Judge.  Affirmed.

Barhoma Law and Matthew Barhoma for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Ivan Ivri, Supervising Deputy Attorney General, and Theresa A. Patterson, Deputy Attorney General, for Plaintiff and Respondent.

Defendant and appellant Gabriel Guerrero (defendant) was sentenced to 84 years to life in prison for conspiracy to commit murder and first degree murder convictions. Defendant more recently petitioned for resentencing pursuant to Penal Code section 1172.6 (former Penal Code section 1170.95).[1] The trial court denied defendant's petition after an evidentiary hearing, finding defendant would still be guilty of murder under current law as a direct aider and abettor. Defendant asks us to decide whether substantial evidence supports the trial court's finding, and he focuses his argument on whether there is substantial evidence he intended to kill, as opposed to just assault, the murder victim.

## I. BACKGROUND

### A. *The Offense Conduct and Criminal Charges*

On April 27, 2005, murder victim Ryan Dasalla (Dasalla) was standing 75 to 100 yards from Gabrielino High School with friend and classmate Joshua Navarro (Navarro). At the time, Dasalla was 17 years old and a senior at the high school.

Navarro observed a maroon-colored vehicle approaching where he and Dasalla were standing. The vehicle stopped and its driver asked Dasalla, "Do you write?" After Dasalla replied, a "bunch" of men piled out of the vehicle—with one carrying what Navarro initially believed to be a "paint ball gun" and began fighting with Dasalla. Navarro fled, but when he heard gunshots, he turned back and saw Dasalla running and then falling to the ground. Dasalla died at the scene, and a later

---

[1] Undesignated statutory references that follow are to the Penal Code.

autopsy revealed he sustained four gunshot wounds: one to the abdomen, one to each leg, and one to the head, the last of which was fatal.

Marcellano Garza (Garza), who was visiting a relative who lived near the high school, witnessed the shooting. According to Garza, one of the assailants shot Dasalla three or four times with a black rifle and yelled out "I got him" before returning to the minivan and fleeing with the others.

On the day of the murder, the police searched the home of defendant's then-fiancée Regina Zarate (Zarate). At Zarate's home, the police discovered a .22 caliber Ruger semiautomatic rifle that was wrapped in defendant's clothes, some of which were bloody, in a trash can. Forensic testing indicated spent bullet shell casings recovered from the scene of Dasalla's murder and bullet fragments recovered from his body were consistent with having been fired from the rifle found during the search.

A grand jury indicted defendant for Dasalla's murder and conspiracy to commit murder (§§ 187, subd. (a), 182, subd. (a)(1)).[2] The indictment further alleged the crimes were committed for the benefit of a criminal street gang and that a principal personally and intentionally discharged a firearm which caused great bodily injury and death (§§ 186.22, subd. (b)(1)(c), 12022.53, subds. (d) & (e)(1)).

---

[2] Defendant was also charged with being a felon in possession of a firearm. On the eve of trial, defendant pled no contest to that crime.

3

*B.      Evidence About Defendant's Role in the Murder*

The evidence at trial describing defendant's role in the murder of Dasalla came from two witnesses: Zarate and Flora Andrade (Andrade).  Andrade was Zarate's friend who was staying with Zarate and defendant at the home of Zarate's mother.

David Guerrero (David), one of defendant's younger brothers who was a former student at Gabrielino High School, was involved in two fights the day before Dasalla's killing.  In the first altercation, David fought with two men who identified themselves as members of TDS, a tagging crew.  In the second fight, David was jumped by six men, including one of the men from the earlier altercation.  As a result of head injuries he sustained during the second fight, David was hospitalized.

Defendant was a member of Varrio Nuevo Estrada (VNE), a criminal street gang, and he was aware of and angry about his brother's beating.  Although Andrade, Zarate, and defendant had earlier planned to drive Andrade to a check-cashing institution on April 27, 2005 (the day of Dasalla's killing), they never made the trip.  Instead, defendant drove a minivan belonging to Zarate's mother to an apartment and picked up defendant's other brother Daniel Guerrero (Daniel), who was also a member of VNE, and another man.  When Daniel and the other man entered the van with a gun, Andrade knew "something dramatic was going to happen."

From the apartment, defendant drove the van to Gabrielino High School with Zarate in the front passenger seat and Andrade in the rear seat next to Daniel and the other man.  On the way to the school, defendant talked with his brother about retaliating for the assault on their younger brother David.  During the drive,

4

defendant received a call on his cell phone relaying a description of an individual matching Dasalla's appearance.

When defendant and the others arrived at the high school, defendant drove in and out of the school's parking lot and circled the school; to Andrade, it appeared defendant was looking for the individual matching Dasalla's appearance "[b]ecause they were looking at all the kids and saying, 'No, this is not him.' 'No, that's not him.'" Defendant and the other men eventually spotted Dasalla and Navarro, and defendant pulled the van up to where they were and asked, "Where are you from?" a shorthand manner of asking the two teens for their gang affiliation. When Dasalla replied "TDS" (the same tagging crew claimed by David's assailants), defendant, his brother, and the third man jumped out of the van.

Defendant began wrestling with Dasalla and, at some point, Daniel fired the rifle and hit defendant, who released Dasalla, grabbed his side, and exclaimed, "You shot me."[3] Dasalla then attempted to flee, and defendant told Daniel to "Get him" or "Get that fool." Daniel then fired a volley of shots in Dasalla's direction and, immediately thereafter, all three men got back in the van and defendant drove off. As they drove away, Daniel announced, "He's on the ground. I got him. He's on the ground."

---

[3]     Later that same day, defendant sought treatment at a hospital for a .22 caliber-sized gunshot wound to the left side of his abdomen.

## C.     Conviction and Sentencing

After presentation of evidence at trial, the court instructed the jury on liability pursuant to the natural and probable consequences doctrine.  The jury deliberated and found defendant guilty as charged, with true findings on the gang and firearm allegations.  The trial court sentenced defendant to an aggregate sentence of 84 years to life in prison.  On direct appeal, a different panel of this court affirmed the judgment.  (*People v. Guerrero* (May 15, 2012, B229330) [nonpub. opn.].)

## D.     Defendant's Petition for Resentencing

In 2019, defendant petitioned for resentencing pursuant to section 1172.6.  On his form petition, defendant checked boxes asserting an information was filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine, he was not the actual killer, he did not aid or abet the killer, and he was not a major participant in the felony.

The trial court appointed counsel for defendant and summarily denied the petition without a hearing.  The court found the doctrine of natural and probable consequences played "no role" in defendant's murder conviction because the jury must have determined defendant had the intent to kill, and thus necessarily considered him a direct aider and abettor, by virtue of convicting him of conspiracy to commit murder.  In view of instructions that allowed the jury to rely on the natural and probable consequences doctrine for both the murder and conspiracy charges, however, we reversed and remanded with directions to issue an order to show cause.  (*People v. Guerrero* (April 26, 2022, B308529) [nonpub. opn.].)

On remand, the trial court issued the order and held an evidentiary hearing in January 2024. The court admitted into evidence the jury instructions, verdict forms, and transcripts of the trial proceedings from defendant's criminal trial. No witnesses testified at the hearing and neither party offered any additional documentary evidence.

After hearing argument, the court denied defendant's resentencing petition because defendant would still be guilty of murder under current law as a direct aider and abettor. Explaining its ruling on the record, the court recited the evidence establishing defendant "drove to the location . . . [and] was the first one to initiate the assault on Dasalla. He held Dasalla while his brother shot at him. And after being shot by his brother, then said either 'Get the fool' or 'get him.'" The court found this evidence (and the other evidence before it) "established beyond a reasonable doubt that [defendant] had knowledge of the unlawful purpose of the perpetrator, being his brother, that he intended to commit or facilitate the commission of the crime of murder, and that he aided, promoted, and/or instigated the commission of the murder by doing what he did . . . ."

## II. DISCUSSION

Substantial evidence supports the trial court's ruling. On the day of the shooting, defendant and his brother Daniel (Dasalla's actual killer) conspired to retaliate against those who beat up their younger brother the day before. Defendant drove Daniel—who was armed with a rifle—to the high school, helped search for a student who looked like Dasalla, joined in confronting Dasalla, and fought with Dasalla while Daniel attempted to shoot Dasalla. When Daniel missed and mistakenly

7

shot defendant, defendant urged his brother to continue and "get" Dasalla, which is strong evidence that he knew of (and indeed encouraged) Daniel's intention to kill Dasalla and shared that same intent. This evidence of intent to kill is further reinforced by defendant's actions after he knew Daniel had shot Dasalla, dropping him to the ground: defendant helped Daniel flee the scene and later disposed of the murder weapon.

Section 1172.6 authorizes resentencing a defendant convicted of murder who was "'not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).)" (*People v. Lewis* (2021) 11 Cal.5th 952, 959.) In a sufficiency of the evidence challenge to a trial court section 1172.6 ruling on appeal, our review is for substantial evidence. (*People v. Reyes* (2023) 14 Cal.5th 981, 988.)

The guilt of a direct aider and abettor to murder is "based on a combination of the direct perpetrator's acts and the aider and abettor's *own* acts and *own* mental state." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1117.) For a defendant to be liable as a direct aider and abettor of first degree murder, "'the prosecution must show that the defendant aided or encouraged the commission of the murder with knowledge of the unlawful purpose of the perpetrator and with the intent or purpose of committing, encouraging, or facilitating its commission. [Citation.] . . . An aider and abettor who knowingly and intentionally assists a confederate to kill someone could be found to have acted willfully, deliberately, and with premeditation, having formed his own culpable intent. Such an aider and abettor, then, acts with the mens rea required for first degree

8

murder.' [Citation.]" (*In re Lopez* (2023) 14 Cal.5th 562, 579; see generally *People v. Curiel* (2023) 15 Cal.5th 433, 467 ["'proof of aider and abettor liability requires proof in three distinct areas: (a) the direct perpetrator's actus reus—a crime committed by the direct perpetrator, (b) the aider and abettor's mens rea'—which here includes knowledge that the direct perpetrator intends to commit the crime or life-endangering act, 'and (c) the aider and abettor's actus reus—conduct by the aider and abettor that in fact assists the achievement of the crime'"].)

Substantial evidence here supports the trial court's finding that all of these elements are satisfied with respect to defendant's participation in Dasalla's murder. Defendant only argues otherwise with respect to the element of intent; he believes "there is no competent evidence that [defendant] knew about Daniel's intentions or acted with the specific intent to help him accomplish that goal." That cannot be squared with the record. In addition to the motive, planning activity, and post-shooting activity that we have already described, there is a single fact that suffices even by itself to reveal the flaw in defendant's argument: after defendant was well aware that Daniel had attempted to shoot Dasalla but missed and shot defendant instead, defendant told Daniel to continue and "get" Dasalla. This obviously demonstrates that defendant shared (and perhaps even spawned) Daniel's murderous intent. Because there is also unchallenged substantial evidence of actions by defendant that assisted in realizing that intent, the trial court correctly denied defendant's resentencing petition.

9

## DISPOSITION

The order denying defendant's section 1172.6 petition is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, Acting P. J.

We concur:

MOOR, J.

KIM (D.), J.